UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 18, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Crystal S. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-1223-CDA

Dear Counsel:

On April 25, 2024, Plaintiff Crystal S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' briefs (ECFs 10, 13-14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE and REMAND the Commissioner's decision. This letter explains why.

I.      **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on November 29, 2018, alleging a disability onset date of April 1, 2014.[2] Tr. 150-55. Plaintiff's claims were denied initially and on reconsideration. Tr. 93-96, 98-102. On June 24, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 29-61. Following the hearing, on September 1, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 9-27. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-6, so Plaintiff filed a complaint in this Court seeking review of the ALJ's decision, Tr. 1223-1231. On September 28, 2022, Judge Maddox remanded the case to the Commissioner for further administrative proceedings. Tr. 1271-75. On March 7, 2023, the AC vacated the ALJ's

---

[1] Plaintiff filed this case against the Commissioner of Social Security on April 25, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Plaintiff amended the onset date to July 10, 2019. Tr. 1094, 1135.

[3] 42 U.S.C. §§ 301 et seq.

decision and remanded Plaintiff's case for a new hearing. Tr. 1266-70. On December 6, 2023, an ALJ held a new hearing. Tr. 1131-57. Following the hearing, on February 21, 2024, the ALJ again determined that Plaintiff was not disabled. Tr. 1091-1126. Because the AC did not assume jurisdiction over Plaintiff's case, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a); 20 C.F.R. § 416.1484(d); 20 C.F.R. § 404.984(d).

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful activity during the period from her alleged onset date of July 10, 2019, through her date last insured of December 31, 2023." Tr. 1097. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depression, anxiety, fibromyalgia, and obesity." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "allergies, asthma, palpitations/history of congestive heart failure/status post cardiac ablation, diabetes, hyperlipidemia, hypertension, right 3rd MCP osteoarthritis, Grade 1 anterolisthesis at L4-5 and L5-S1, obstructive sleep apnea, headaches, status post cardiac ablation, and status post gastric bypass surgery." *Id.* at 1097-98. At step three, the ALJ determined that Plaintiff "[t]hrough the date last insured, . . . did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 1102. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(h) except: [Plaintiff] could walk or stand for about 4 hours in an 8-hour workday. [Plaintiff] could never climb ladders, ropes, or scaffolds hut she could climb ramps and stairs occasionally. [Plaintiff] could occasionally balance. stoop, kneel, crouch, and crawl. [Plaintiff] could never work around unprotected heights or moving, mechanical parts. [Plaintiff] could have occasional exposure to dust, fumes, and pulmonary irritants. [Plaintiff] was limited to simple, routine, repetitive tasks and non-production paced tasks, (defined as no assembly line work or work with hourly quotas, and work performed at a consistent pace throughout the workday).

*Id.* at 1105-06. The ALJ determined that Plaintiff "[t]hrough the date last insured, . . . was unable to perform past relevant work" as a Teacher (DOT[4] #091.227-010) but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 1115-16. Therefore, the ALJ concluded that Plaintiff was not disabled "at any time from July 19, 2019, the alleged onset date, through December 31, 2023, the date last insured." *Id.* at 1117.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff contends that the RFC is unsupported by substantial evidence because the ALJ "applied the incorrect legal standard at the second step of the symptoms analysis by relying on [] objective findings . . . to discount Plaintiff's fibromyalgia symptoms." ECF 10, at 5, 8. Specifically, Plaintiff argues that the ALJ failed to "adequately consider Plaintiff's fatigue from her fibromyalgia[.]" *Id.* at 5. Defendant counters that the ALJ adequately considered—and the RFC addresses—Plaintiff's fibromyalgia symptoms. ECF 13, at 7-18.

An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In *Arakas*, the ALJ "discredited [the claimant's] statements about the severity, persistence, and limiting effects" of her fibromyalgia symptoms "because [the ALJ] did not find [the symptoms] to be 'completely consistent with the objective evidence.'" *Id.* at 96. Because the claimant "was 'entitled to rely exclusively on subjective

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,'" the Fourth Circuit held that the ALJ "applied an incorrect legal standard" by discrediting the claimant's complaints "based on the lack of objective evidence corroborating them." *Id.* (brackets in original). The court further concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (citation omitted).

Here, the ALJ determined Plaintiff's fibromyalgia to be a medically determinable and severe impairment. Tr. 1097. The ALJ then concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms [were] . . . inconsistent with the conservative nature of the treatment required, with the physical examination and mental status findings through the date last insured, and with many of the daily activities [Plaintiff] reported." *Id.* at 1108. As to fibromyalgia, the ALJ offered the following analysis:

> Beginning with [Plaintiff]'s physical impairments, the evidence confirms that [Plaintiff] is obese, and that she has been diagnosed with fibromyalgia. As discussed earlier in this decision, [Plaintiff] complained of upper back pain, hand pain, and problems with pain when walking or sitting too long; however, imaging confirmed only mild lumbar degenerative changes in the lumbar spine . . ., there is no evidence or more than very conservative treatment for the degenerative changes. Imaging of [Plaintiff]'s hands revealed osteoarthritis in the PIP but otherwise, there was no synovitis and no erosions . . . . A physical examination from May 2020 showed normal posture and gait, with normal muscle tone and normal strength . . . . As noted above, treatment records indicated that [Plaintiff] responded well to [continuous positive airway pressure ("CPAP")] therapy; however, treatment records noted episodes of noncompliance with consistent use of the CPAP machine . . . .
>
> In June 2020, [Plaintiff] denied prolonged morning stiffness, joint swelling, erythema, and deformity in her hands, wrists, or feet. [Plaintiff] did not complain of muscle weakness. X-rays of the most symptomatic joints failed to show signs of erosions or inflammatory arthritis. The x-rays showed only tendinitis and osteoarthritis. However, [Plaintiff] reported pain in her hands with activities such as fixing her hair. She also complained of knee pain. The examination showed a body mass index of 47.59. Laboratory tests revealed a mildly positive RF of 19, which improved in a repeat test to 16. Dr. Dareen Almanabri reported that she did not have enough evidence to diagnose rheumatoid arthritis, but she diagnosed fibromyalgia based on the complaints of widespread pain and the observance of trigger points. [Plaintiff] was advised to adapt and use a progressive cardiovascular stretching and exercise program, employ better sleep hygiene, to lose weight, to work on her depression, and to continue a medication regimen . . . . In August 2020, [Plaintiff] was taking the maximum dose of Cymbalta for her reported widespread pain mostly in her hands, right hip, and pain radiating down the right lower

extremity and bilateral shoulder pain. She denied prolonged morning stiffness, joint swelling, erythema, warmth or deformity in her hands, wrists, or feet. The same treatment regimen was continued . . .. A physical examination from January 2021 documented a body mass index of 48.76 . . ..

During a review of systems in April 2021, [Plaintiff] denied back pain, neck pain, joint pain, muscle pain, and swelling. The physical examination showed a body mass index of 47.05. [Plaintiff] had a full range of motion in her neck, her lungs were clear to auscultation, and she had a normal heart rate and regular rhythm. There was no peripheral edema and distal pulses were strong and equal in all limbs. All extremities moved well with full range of motion, full strength, and no tenderness or swelling. Sensation was intact to light touch and there were no foal motor deficits. The pain assessment indicated that there was no actual or suspected pain . . .. During a telehealth visit in June 2021, [Plaintiff] complained of lethargy, noting that when her boyfriend parked in a handicapped, space she could barely make it into the store. She reported that her arms and legs felt tired and that she had generalized fatigue. . . .

In treatment records from March 2022, [Plaintiff displayed] full range of motion in the neck, . . . [t]here were no gross deformities in the extremities[,] and all extremities moved well with full range of motion and strength. . . .

The longitudinal medical evidence through the date last insured shows that [Plaintiff] continued to complain of widespread pain that prevented her from working, that interrupted her sleep, and that caused severe fatigue during the day. She was diagnosed with fibromyalgia but there was no definitive diagnosis of rheumatoid arthritis as discussed earlier in the treatment records. However, while [Plaintiff] would report chronic pain and tenderness to Dr. Almanabri . . ., she consistently denied back pain. neck pain, joint pain, and muscle pain in the cardiology records . . .. The records cited above noted multiple examples of [Plaintiff] stopping prescribed medications without medical advice due to reported stomach issues. [Plaintiff] complained of severe pain and fatigue, but she was able to change her living situation and initiate and maintain a personal relationship for a significant length of time, which involved traveling to Virginia and staying with her boyfriend at his home.

*Id.* at 1108-11.

Governed by *Arakas*, the Court agrees that the ALJ's evaluation of Plaintiff's fibromyalgia warrants remand. "[P]hysical examinations [of patients with fibromyalgia] will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Arakas*, 983 F.3d at 96 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003)). In *Arakas*, the Fourth Circuit held that the ALJ erred when they relied principally on objective results such as a "full range of motion" or "lack of joint inflammation" when discounting the claimant's complaints as inconsistent with the objective evidence. *Arakas*,

983 F.3d at 96; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). "[T]rigger points," which *Arakas* defines as "tenderness in specific sites on the body," are "the only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 97. Apart from trigger-point evidence, objective evidence has "no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id.* An ALJ therefore errs by discrediting a claimant's fibromyalgia symptoms based upon a lack of objective evidence to corroborate the symptoms. *See id.* at 98. If an ALJ *does* consider objective evidence in relation to fibromyalgia, that evidence "should be treated as evidence *substantiating*" a claimant's fibromyalgia symptoms. *Id.* at 97-98 (emphasis in original).

As an initial matter, when the ALJ determined that objective evidence was inconsistent with Plaintiff's alleged symptoms, the ALJ drew no explicit distinction between Plaintiff's fibromyalgia-related allegations and her allegations concerning other medically determinable and severe impairments. *See* Tr. 1097 (determining that Plaintiff suffered from other severe physical impairments, including obesity); *see also* Tr. 1108-11. This lack of precision leaves the Court unable to determine whether the ALJ's discussion of Plaintiff's full range of motion and strength, no tenderness or swelling, and no gross deformity of the extremities was intended to refer to a different impairment because the ALJ discussed objective findings within the same paragraph referencing Plaintiff's fibromyalgia. *See Richard B. v. Kijakazi*, No. BAH-22-3193, 2023 WL 5938763, at *3 n.5 (D. Md. Sept. 12, 2023) (remanding where the ALJ "discussed objective findings within the same paragraph referencing [p]laintiff's fibromyalgia," which left the Court unable to "infer that the ALJ's discussion . . . was intended to pertain to a different impairment that does produce objective evidence").

Moreover, the ALJ contravened *Arakas* when they relied on objective evidence to find Plaintiff's symptoms as inconsistent. First, the ALJ's discussion of Plaintiff's normal physical examinations is error. In assessing her RFC, the ALJ discussed Plaintiff's normal physical examinations, including full range of motion and strength, no tenderness or swelling, and no gross deformity of the extremities, which suggests the ALJ viewed those facts as mitigating Plaintiff's subjective complaints about her fibromyalgia. *See* Tr. 1108-09; *see also Lenora J. v. Dudek*, No. 24-0960-CDA, 2025 WL 958915, at *5 (D. Md. Mar. 31, 2025) (interpreting ALJ discussion of claimant normal physical examinations in the RFC as discrediting subjective evidence regarding fibromyalgia symptoms); *Natalie M. v. O'Malley*, No. 23-1525-CDA, 2024 WL 3819295, at *4 (D. Md. Aug. 14, 2024) ("The ALJ's reference to Plaintiff's . . . lack of tenderness . . . constitute[d] error under *Arakas*."). Second, the ALJ's discussion of Plaintiff's conservative treatment also constitutes error. *See* Tr. 1110-11. This is so because Plaintiff "cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'" *Arakas*, 983 F.3d at 102 (citing *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)); *see Leniya S. v. Saul*, No. DLB-19-2990, 2021 WL 1224067, at *2-3 (D. Md. Mar. 31, 2021) (remanding where "the ALJ juxtaposed plaintiff's 'conservative treatment' with her normal physical examination findings," and where "the ALJ impermissibly used objective evidence to discount plaintiff's complaints"). Third, the ALJ's discussion of Plaintiff's daily activities amounts to error. *See* Tr. 1111. Absent

a more detailed explanation, it is unclear how "changing a living situation" and "initiating and maintaining a personal relationship for a significant length of time" contradicts Plaintiff's subjective complaints of pain and fatigue. *See James L. v. Kijakazi*, No. 23-1137-BAH, 2023 WL 5804621, at *4 (D. Md. Sept. 6, 2023). Because the ALJ's decision lacks this explanation, the activities of "changing a living situation" and "initiating and maintaining a personal relationship for a significant length of time" "lack probative value in assessing [Plaintiff]'s mental and physical abilities to sustain full-time work." *Id.*

Because Plaintiff was "entitled to rely exclusively on subjective evidence to prove" that her symptoms were "so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight-hour day," the ALJ "applied an incorrect legal standard" in discrediting her complaints based on the lack of objective evidence corroborating them. *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006). Thus, the ALJ "improperly increased [Plaintiff's] burden of proof" by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *see, e.g.*, *Michelle P. v. Saul*, No. TMD-19-3499, 2021 WL 119076, at *4-5 (D. Md. Jan. 12, 2021) (remanding where the ALJ found the plaintiff's fibromyalgia severe but noted that "testing in the record showed normal gait and no neurological defects" and "spinal imaging did not show significant abnormalities"); *Charlene L. v. Saul*, No. 19-626, 2021 WL 725822, at *4-6 (E.D. Va. Feb. 3, 2021) (remanding where the ALJ improperly considered plaintiff's fibromyalgia by finding the plaintiff experienced pain but noting "the treatment notes show[ed] an improvement in joint pain due to conservative treatment" and "other physical examinations show a normal range of hip and knee motion as well as other joints, normal sensation and strength in the bilateral extremities and no joint tenderness"). Thus, remand is proper. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.  CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge